UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.: 0:22-cv-61639

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

    Plaintiff,

vs.

AETNA LIFE INSURANCE COMPANY,

    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Vanguard Plastic Surgery, PLLC d/b/a Vanguard Aesthetic & Plastic Surgery ("Plaintiff"), a Florida corporation, sues Defendants Aetna Life Insurance Company ("Aetna" or "Defendant"), and alleges as follows:

1. This action concerns the unreasonably low rate at which Defendant reimbursed Plaintiff for medical services Plaintiff provided to a patient, D.K. ("Patient"), covered under a health insurance plan insured, operated, and/or administered by Defendant.

2. Plaintiff provided medically necessary services to Patient consisting of a complex surgical procedure relating to the medically necessary repair of Patient's severe finger laceration.

3. Plaintiff performed the surgery on Patient as the only available on-call physician to perform the required procedures when Patient presented for treatment after sustaining injuries while cutting a tree, and/or as a continuation of care for inadvertent services.[1]

4. Plaintiff performed the surgery with the understanding and expectation that Defendant would reimburse Plaintiff for the services it provided to Patient at rates equal to the fair market or reasonable value of Plaintiff's services. Plaintiff's understanding and expectation in this regard was based upon Defendant's representations on the remittance documents it sent to Plaintiff, the course of dealing and course of performance between Defendant and Plaintiff, and the requirements of Florida law.

5. Instead, Defendant has wrongfully paid Plaintiff at rates below: (1) the "usual and customary provider charges" in violation of Section 641.513(5), Florida Statutes, for claims subject to those sections; and/or (2) the reasonable value of the services in the marketplace required under *quantum meruit* by the implied-in-fact contract and/or the implied-in-law contract between the parties, for claims not subject to Section 641.513(5).

6. Florida has a strong public policy of protecting both patients who receive medical services in Florida and physicians who provide medical services in Florida.

7. Further, Plaintiff is obligated by law to provide emergency services and care to Defendant's members, and Defendant is obligated by law to cover those services. Under Section 641.513(5), Florida law strikes a balance concerning emergency and inadvertent services and care provided by non-participating providers like Plaintiff: Plaintiff must provide emergency services and care to all individuals presenting with an emergency medical condition, regardless of insurance

---

[1] Upon information and belief, there was no in-network physician of the same or similar specialty with the qualifications to perform the required procedures at the facility at the time Patient presented for treatment.

coverage; and managed care organizations, like Defendant, must reimburse Plaintiff for providing that care to its members according to the dictates set forth by Section 641.513(5).

8. Section 641.513(5) furthers Florida's public policy by protecting members of managed care organizations from being balance billed for services subject to these statutes, and by protecting non-participating providers who provide services subject to these statutes from being unfairly or inadequately compensated for services they are legally required to perform.

9. Under Section 641.513(5), Defendant is obligated to pay Plaintiff, on claims subject to those sections, the lesser of Plaintiff's billed charges and the "usual and customary provider charges for similar services in the community where the services were provided"; i.e., the fair market value of the services, as interpreted by Florida courts.

10. For claims not subject to Section 641.513(5), Defendant is obligated to pay Plaintiff under their implied contracts and the doctrine of *quantum meruit* the lesser of Plaintiff's billed charges or, if different, the reasonable value of the services Plaintiff's physicians rendered to Defendant's members.

11. Defendant has already adjudicated these claims and determined that all of the claims at issue in this action were for covered services rendered to Patient, and Defendant has already paid all of the claims at issue, albeit at amounts representing a mere fraction of the applicable shared savings rates for the services, the "usual and customary provider charges" for the services, and/or the reasonable value of the services. Thus, this action concerns only the *rate of* payment and not the *right to* payment. This action does not include any claims in which benefits were denied, nor does it challenge any coverage determinations under ERISA.

12. In this action, Plaintiff is seeking to have Defendant comply with their obligation to pay Plaintiff at the rates that represent the "usual and customary provider charges" required by

Section 641.513(5), or the reasonable value of Plaintiffs services in the marketplace required under *quantum meruit* based on their implied-in-fact and/or implied-in-law contracts.

13. For the claims at issue in this action, the conduct and relationship of Plaintiff and Defendant and the surrounding circumstances created an enforceable contract in law and in fact, as well as a statutory right. Further, Plaintiff did not agree to accept discounted rates from Defendant for its services and did not agree to be bound by the terms of Patient's plan or by Defendant's reimbursement policies or rate schedules. Nevertheless, Defendant has not paid Plaintiff the fair market or reasonable value of its services.

14. The impact of Defendants' underpayments on the claims at issue is considerable and has left a balance due from Defendants exceeding the minimum jurisdictional limits of this Court.

**Parties**

15. Plaintiff is a Florida professional limited liability company with its principal place of business located in Broward County, Florida.

16. Defendant is a foreign for-profit corporation registered to do business in the state of Florida. At all material times, Defendant was a health insurer and/or health claims administrator actively engaged in the transaction of health insurance servicing in the state of Florida and providing managed healthcare products and administrative services throughout Florida, including in Broward County, Florida.

**Jurisdiction and Venue**

17. The amount in controversy exceeds the sum of $75,000, exclusive of interest, costs, and attorneys' fees.

18. Defendant operates, conducts, engages in, and carries on business in the state of Florida and has offices and agencies throughout the state of Florida.

19. Venue is proper in Broward County, Florida, because the Plaintiff provided the medical services at issue to the Patient in Broward County and because the payments to Plaintiff for those services were due in Broward County.

**Facts**

20. Plaintiff, through its physicians, provides medical services, including emergency services and care, reconstructive services, and other surgical services to patients in Broward County, Florida, including at Plantation General Hospital[2], located in Plantation, Florida.

21. Plaintiff's physicians are licensed medical doctors practicing in the state of Florida.

22. Plaintiff's physicians specialize in complex reconstructive surgery, including tissue transfers, skin grafts, and other procedures that allow for complex repair of human tissue after traumatic injuries.

23. Furthermore, Plaintiff's Physicians are bound by their professional ethics and the medical standard of care to not only render emergency treatment, but also provide continuity of care in the interest of the patient.

24. Defendant provides coverage for healthcare services provided to members of its managed healthcare products in the state of Florida.

25. In exchange for premiums, fees, and/or other forms of compensation, Defendant agrees to administer claims and provide reimbursement for healthcare services rendered to members of its health insurance policies.

---

[2] Plantation General Hospital has since been purchased and now operates as HCA University Hospital.

*Patient's Health Insurance Policy*

26. At all material times, Patient was a member of a group health insurance policy for Coconuts Bahama Grill, LLC issued, fully insured, and administered by Defendant, a health maintenance organization ("HMO"), which policy provided coverage for services received by Patient and provided in the state of Florida (the "Policy").

*Relevant Statutes*

27. Section 641.513(5), Florida Statutes, provides as follows:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

(a) The provider's charges;
(b) The usual and customary provider charges for similar services in the community where the services were provided; or
(c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.
Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4).

28. Florida courts have interpreted the phrase "usual and customary provider charges for similar services in the community where the services were provided" under Section 641.513(5) to require payment of "fair market value" for the services rendered. *Baker Cnty. Med. Servs. v. Aetna Health Mgmt., LLC,* 31 So. 3d 842, 845–46 (Fla. 1st DCA 2010).

*Surgery – September 6, 2019*

29. On or about September 5, 2019, Patient presented to Plantation General Hospital for a severe finger laceration.

30.     On or about September 6, 2019, Plaintiff, through its physicians, Dr. Dreszer, provided medical services to Patient at Plantation General Hospital, which consisted of a repair of Patient's severe finger laceration, which was a covered benefits under Patient's Plan ("Surgery").

31.     The Surgery included repair and reconstruction of the finger, volar plate and interphalangeal joint, which requires reconstruction of each tendon pulley, adjacent tissue transfers and nerve repair with synthetic conduits for each nerve.

32.     The procedure was more complex than usual as the Surgery included a repair of the flexor tendon in the Zone 2 flexor tendon sheath, dubbed "No Man's Land" by the medical field, due to the challenges associated with repairing these types of hand injuries.

33.     Dr. Dreszer was out-of-network at all material times.  Upon information and belief, since Plaintiff was the on-call plastic surgeon and the only available plastic surgeon available that could perform extensive reconstructive surgery at Plantation General Hospital,  the patient did not have the ability and opportunity to choose a participating provider at the facility who is available to treat the patient.

34.     This is a particularly complex procedure.  Upon information and belief, Dr. Fletcher was the only on call physician at the time D.K. required treatment, who was qualified to perform the medically necessary procedure. Plantation General Hospital is an in-network facility.

*Defendants' Underpayment Claims*

35.     Plaintiff submitted claims for reimbursement for the services Plaintiff provided to Patient as part of the Surgery (the "Claims").

36.     Plaintiff submitted the Claims to Defendant as the designated claims administrator responsible for adjudicating the Claims on behalf of Patient's policy.

37. Plaintiff's charges for the services it provided as part of the Surgery totaled $97,651.00, of which Aetna paid $1,704.89 for his services.

38. Defendant paid Plaintiff a mere 1% of Plaintiff's charges for the services at issue and nowhere near the amount Defendant is required to pay to Plaintiff under Florida law.

39. Defendant issued the remittance notices of its foregoing underpayments on the Claims to Plaintiff in Fort Lauderdale, Florida.

40. Plaintiff never agreed to accept discounted rates from Defendant or to be bound by Defendant's reimbursement policies or rate schedules with respect to the Claims. Despite this, AETNA issued a misleading Explanation of Benefits for Plaintiff's Claims citing payment at a percentage of "the negotiated rate" - yet no rate was negotiated between Plaintiff and AETNA.

41. Upon information and belief, Defendant's course of dealing and course of performance with Plaintiff was to administer claims for services provided as emergent care, continuation of care and/or inadvertent services, like the Claims for the services underlying the Surgery at issue, based on usual and customary charges.

42. The amounts Defendant paid to Plaintiff for the services underlying the Claims for the surgery do not correspond with the statutory language mandated under Florida law and usual and customary charges.

43. Defendant already adjudicated the Claims and determined they were for covered services under the Policy.

44. Defendant has at all material times acknowledged and approved Plaintiff's rendering of the medical services underlying the Claims to Patient, upon information and belief, by authorizing Patient's admission to Plantation General Hospital on or about September 6, 2019

for the treatment of Patient's emergency medical conditions and/or continued treatment of the Plaintiff's initial medical condition for which she presented for treatment on September 5, 2019.

45. Defendant was and is aware that Plaintiff provided medical services to Patient and billed Defendant for the medical services Plaintiff's physicians provided to Patient with the expectation and understanding that its services had been approved by Defendant and that it would be reimbursed by Defendant at rates reflecting (a) lesser of (i) Plaintiff's billed charges or (ii) the "usual and customary provider charges for similar services" (i.e., fair market value), as provided by Section 641.513(5), for claims subject to this section, and/or (b) the reasonable value in the marketplace, or *quantum meruit*, of the medical services Plaintiff provided, for claims determined to be not subject to Section 641.513(5).

46. Defendant in fact determined Plaintiff's medical services were covered services and paid Plaintiff for the medical services it provided to Patient, albeit at rates inappropriately below Plaintiff's billed charges, the fair market value, and the usual and customary rates for Plaintiff's services in the marketplace.

47. The rates at which Defendant paid the Claims are significantly less than the rates required by Florida law. For claims covered by Section 641.513(5), Defendant has not paid Plaintiff the lesser of its billed charges or the fair market value of the services provided. For claims not covered by those sections, Defendant has not paid Plaintiff the usual and customary rates for the services or the reasonable value of the services in the marketplace.

48. Defendant's refusal to pay Plaintiff the fair market value and/or the reasonable value of the medical services Plaintiff provided to Patient has caused Plaintiff to suffer damages in an amount equal to the difference between the amounts Defendant paid on the Claims and the fair market value and reasonable value of the services Plaintiff provided, plus Plaintiff's loss of

use of that money. The difference between the amounts Defendant paid and Plaintiff's billed charges totals **$95,946.11**.

49. All necessary conditions precedent for Defendant to perform its obligations pursuant to Section 641.513(5) and/or the applicable express or implied contracts between the parties occurred or were performed, excused, and/or waived.

## Count I
### Breach of Implied-in-Fact Contract - Fair Market Value

50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49 above.

51. At all material times, Defendants knew or should have known that Plaintiff was a non-participating medical provider that provided medical services and staffing at Plantation General Hospital.

52. At all material times, Defendants knew or should have known that Plaintiff is obligated by law to provide emergency services and care to Defendants' members, including Patient, and that Defendants are obligated by law to cover those services.

53. At all material times, Defendants were obligated to cover and pay for medical services Patient received at Plantation General Hospital.

54. At all material times, Defendants were aware of their obligations to non--contracted providers like Plaintiff and were aware that Plaintiff provided medical services to Patient with the reasonable expectation and understanding that Plaintiff would be reimbursed by Defendants at rates, under *quantum meruit,* reflecting the reasonable value of its services m the marketplace.

55. At all material times, Defendants knew that Plaintiff had not agreed to accept discounted rates from Defendants for the Claims and had not agreed to be bound by Defendants' reimbursement policies or rate schedules.

56. With full knowledge of their obligations and the surrounding circumstances as described in detail above, Defendant:

    a. approved of Patient presenting to Plantation General Hospital in Plantation, Florida, on the dates listed above; and

    b. impliedly agreed to pay Plaintiff the reasonable value in the marketplace for those medical services.

57. Plaintiff submitted the Claims for the Surgery seeking reimbursement at rates representing the reasonable value of the services rendered.

58. Plaintiff submitted the Claims to AETNA as the designated administrator responsible for adjudicating the Claims on behalf of Patient's Plan.

59. Defendants acknowledged their obligation and responsibility for payment and their approval of Plaintiffs performing medical services as part of the Surgery by paying some of Plaintiffs claims for those services, albeit at a rate far below that to which Plaintiff is entitled.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the medical services at issue and the reasonable value of those services in the marketplace, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

### COUNT II
### Violation of Section 641.513(5)- Emergency Services

60. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49 above.

61. Section 641.513(5) imposes a duty on Defendant, as a managed care organization to reimburse Plaintiff for the Claims according to the statutes' dictates.

62. Pursuant to Section 641.513(5), reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

　　a. The provider's charges;
　　b. The usual and customary provider charges for similar services in the community where the services were provided; or
　　c. The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4). F.S. 641.513(5).

63. Plaintiff has a private right of action under Section 641.513(5) to enforce the statutes' provisions against Defendant.

64. At all material times, Plaintiff was a non-participating emergency medical provider that staffed the emergency department at Plantation General Hospital.

65. The medical services Plaintiff provided to Patient as part of the Surgery were emergency services and care as defined in Section 641.47(8), Florida Statutes and/or were a continuation of care stemming from covered non-emergency services and/or inadvertent services, rendered to patient at Plantation General Hospital on September 5 and 6, 2019.

66. Plaintiff submitted the Claims for the emergency services it provided to Patient, which Claims were subject to Section 641.513(5).

67. Plaintiff submitted Claims underlying the Surgery to Defendant.

68. Defendant, as a managed care organization licensed and/or operating in the state of Florida, was responsible for payment of the Claims.

69. The Claims underlying the Surgery set forth Plaintiff's billed charges for the emergency services it provided to Patient on September 6, 2019.

70. Defendant determined the Claims underlying the Surgery were covered emergency services.

71. Plaintiff and Defendant did not mutually agree on a specific charge for any of the Claims. Plaintiff did not agree to accept discounted rates from Defendant for the Claims, nor did it agree to be bound by Defendant's reimbursement policies or rate schedules with respect to those Claims.

72. Defendant violated Section 641.513(5) by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims underlying the Surgery.

73. As a result of Defendant's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Section 641.513(5), Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

74. Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Claims underlying the Surgery and the fair market value of the medical services underlying those Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the Claims underlying the Surgery and the fair market value of the medical services underlying those Claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

DATED this 1st day of September, 2022.

                                          Respectfully submitted,

**DI PIETRO PARTNERS, PLLC**
901 East Las Olas Blvd, Suite 202
Fort Lauderdale, FL 33301
Primary Email Address:
service@ddpalaw.com
Secondary Email Address:
nicole@ddpalaw.com
Telephone: (954) 712-3070
Facsimile: (954) 337-3824

/s/ *Nicole Martell*
NICOLE MARTELL, ESQ.
Florida Bar No.: 100172
nicole@ddpalaw.com